UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| NORTH WIND SITE SERVICES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:24-CV-38-TAV-JEM |
| | ) | |
| UNIFIED CONTRACTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This civil action is before the Court on plaintiff's Motion for Default Judgment [Doc. 16], in which plaintiff moves for a default judgment against Unified Contractor, Inc. ("Unified") pursuant to Federal Rule of Civil Procedure 55(b)(1) in the amount of $68,431.29. The Court construes this motion as one under Rule 55(b)(2) for the reasons stated *infra*. The Court has carefully considered the record as well as the relevant law, and for the reasons discussed herein, plaintiff's motion [Doc. 16] is **GRANTED in part** and **DENIED in part**.

**I. Background**

The Court takes as true the factual allegations in the complaint. *Bogard v. Nat'l Credit Consultants*, No. 1:12 CV 2509, 2013 WL 2209154, at *3 (N.D. Ohio May 20, 2013). Plaintiff is a business that provides environmental services to federal, state, and local agencies, as well as tribes and the private industry [Doc. 1, p. 1]. On or about August 13, 2022, plaintiff entered into a Subcontractor Agreement ("Agreement") with defendant under which defendant was obligated to provide services to plaintiff in exchange for

payment [*Id.* at 1–2]. Article 4.3 of the Agreement permitted the "Subcontract Administrator" to audit invoices and supporting documentation before final payment was made to the defendant, and defendant was required to provide "Contractor" with access to such records as needed to perform the audit [*Id.* at 2]. Based on the results of the audit, the payment to defendant could be reduced if the amounts were not properly payable, reduced for overpayments, or increased for underpayment [*Id.*].

In Article 4.4 of the Agreement, entitled "Conditions and Withholding," the Agreement states:

> The obligation of Contractor to make the payments required under the provisions of this Subcontract shall be subject to (i) reasonable deductions on amounts of defects in material or workmanship, (ii) any Claims which Contractor may have against the Subcontractor, and (iii) payment by Client to Contractor. Each payment made shall be subject to reduction to the extent of amounts which are found by Contractor, Client, and/or Subcontractor not to have been properly payable. Subcontractor shall promptly notify Contractor of any overpayments and remit the overpayment amount to Contractor along with a description of the overpayment . . . .

[*Id.*]. Plaintiff states that it made an overpayment to defendant in the amount of $65,276.29, and on July 7, 2023, plaintiff notified defendant of the overpayment and demanded repayment [*Id.* at 3]. On or about July 18, 2023, defendant responded to plaintiff's demand, stating it "had a change order we were going to submit that we never did" [*Id.*]. A few days later, defendant sent an invoice to plaintiff via email, stating it was the invoice "for the Change order I forgot to submit on the Debris Removal" [*Id.*]. Plaintiff never provided written approval for the change order referenced by defendant [*Id.*].

2

As defined by the Agreement, "Change Order" means "a formal written order authorizing an addition, deletion, or revision in the Work, and/or an adjustment in the Subcontract price or time, issued on or after the effective date of the Subcontract and signed by the Subcontractor and the Subcontract Administrator" [*Id.*]. Plaintiff alleges that defendant has retained the overpayment from plaintiff, including the amount that it does not dispute owing to plaintiff [*Id.*]. Further, while defendant has never denied the overpayment, defendant has refused plaintiff's demands to return the overpayment [*Id.* at 3–5]. Consequently, on February 1, 2024, plaintiff filed its complaint against defendant, asserting claims of breach of contract and conversion based on defendant's retention of the overpayment [*Id.* at 4–5]. Thus, plaintiff's instant motion seeks a default judgment against defendant [Doc. 16], attaching an affidavit from plaintiff's counsel, the parties' Agreement, and two demand letters plaintiff sent defendant prior to the commencement of this action [Doc. 16-1; Doc. 16-2; Doc. 16-3].

## II.  Initial Matter

As stated previously, while plaintiff has moved for default judgment under Rule 55(b)(1), the motion will be decided by the Court under Rule 55(b)(2). Plaintiff's requested amount includes "reasonable" attorney's fees, which precludes the Clerk from entering default under Rule 55(b)(1) because "what constitutes a reasonable fee must be determined by the Court." *See Nat'l Auto Grp., Inc. v. Van Devere, Inc.*, No. 5:20-cv-2543, 2021 WL 1857143, at *2 (N.D. Ohio May 10, 2021) (quoting *Van Zeeland Oil Co. v. Lawrence Agency, Inc.*, No. 2:09-cv-150, 2009 WL 10678619, at *1 (W.D. Mich. Sept. 28, 2009))

3

(stating that a reasonable fee is "not a claim for a sum certain or a sum that can be made certain by computation" as required under Rule 55(b)(1)). Further, given that plaintiff has a "mixed" complaint with "both a claim for a sum certain for [] damages that could fall under Rule 55(b)(1), and a claim for reasonable attorney fees which is not a sum certain that must fall under Rule 55(b)(2)[,]" the motion for default judgment must be decided by the Court pursuant to Rule 55(b)(2). *Van Zeeland Oil Co.*, 2009 WL 10678619, at *2.

Therefore, plaintiff's motion will be reviewed according to Rule 55(b)(2).

**III.    Analysis**

Federal Rule of Civil Procedure 55 "contemplates a two-step process for obtaining a default judgment against a defendant who has failed to plead or otherwise defend." *Banner Life Ins. Co. v. Columbia State Bank*, No. 3:19-CV-119, 2020 WL 3977635, at *1 (E.D. Tenn. July 14, 2020). "First, pursuant to Rule 55(a), a plaintiff must request from the Clerk of Court an entry of default, describing the particulars of the defendant's failure to plead or otherwise defend." *Id.* If the Clerk enters default, "the plaintiff must then move the Court for entry of default judgment pursuant to Rule 55(b)." *Id.*

After the Clerk has entered default, the court must take the complaint's factual allegations as true. *Bogard*, 2013 WL 2209154, at *3; *see also Nat'l Satellite Sports, Inc. v. Mosley Ent., Inc.*, No. 1-CV-74510-DT, 2002 WL 1303039, at *3 (E.D. Mich. May 21, 2002) ("For a default judgement, well-pleaded factual allegations are sufficient to establish a defendant's liability."). However, the court must determine whether the factual allegations "are sufficient to state a claim for relief as to [the] cause of action for which the

4

plaintiff seeks default judgment." *J & J Sports Prods., Inc. v. Rodriguez*, No. 1:08-CV-1350, 2008 WL 5083149, at *1 (N.D. Ohio Nov. 25, 2008); *see also Harrison v. Bailey*, 107 F.3d 870 (6th Cir. 1997) (unpublished table decision) ("Default judgments would not have been proper due to the failure to state a claim against these defendants."). Although the court takes factual allegations regarding liability as true, the plaintiff must prove the amount of damages. *Bogard*, 2013 WL 2209154, at *3.

Thus, the Court must first consider whether plaintiff has alleged a claim for relief before turning to the issue of the proper remedy.

### A. Sufficiency of the Complaint

Plaintiff alleges defendant breached the parties' contractual Agreement, specifically Articles 4.3 and 4.4, by refusing to return the overpayment made by plaintiff [Doc. 1, p. 4]. Further, plaintiff alleges that the overpayment proceeds rightfully belong to defendant, and by intentionally and willfully retaining the money owed to plaintiff, defendant's actions constitute conversion [*Id.*]. Plaintiff states it has been damaged by defendant's breach of contract and conversion, requesting relief for $65,276.29, "plus pre-judgment interest and all attorney's fees and litigation costs related to this matter, as allowed by the Agreement" [*Id.* at 4–5].

#### 1. Choice of Law Provision

Article 1 of Attachment C-1 of the Agreement, as attached to plaintiff's motion for default judgment, contains the parties' choice of law provision [Doc. 16-2, p. 17]. This provision states that the Agreement "shall be governed by and construed in accordance

with the federal common law, statutes and regulations, applicable to interpreting Federal Government Contracts ("Federal Government Contract Law"). To the extent that Federal Government Contract Law does not resolve a particular issue, the laws the Parties agree shall govern . . . will be the laws of the State of Tennessee" [*Id.*].

"[F]ederal common law may govern, even in diversity cases, where a uniform national rule is necessary to further the interests of the Federal Government." *Johnson v. City of Detroit*, 319 F. Supp. 2d 756, 780 (E.D. Mich. 2004) (citing *Miree v. DeKalb County*, 433 U.S. 25, 29 (1977)). However, when a case "raises no question regarding the liability of the United States or the responsibilities of the United States" under a contract, and thus has "no effect upon the United State[s] or its Treasury[,]" courts have ruled that state law should apply. *Miree*, 433 U.S. at 28–29; *accord Bank of Am. Nat'l. Tr. & Sav. Ass'n v. Parnell*, 325 U.S. 29, 33 (1956) (refusing to apply federal law where the case was "purely between private parties and does not touch the rights and duties of the United States"); *Johnson*, 319 F. Supp. 2d at 780–81 (applying Michigan law rather than federal common law to plaintiff's claim for breach of contract because resolution of such claim "raises no question regarding the liability or responsibilities of the United States").

Here, the parties' Agreement was entered into for the benefit of the United States as the "Client" of the Agreement was the United States Army Corp of Engineers [Doc. 16-2, p. 1]. Beyond being a beneficiary, however, the United States is not a party to this action nor is there any question in this case of the liability or responsibilities of the United States. Thus, this case having no apparent effect upon the United States or its Treasury, the Court

will apply the laws of Tennessee rather than federal common law to plaintiff's breach of contract claim, as provided for in the parties' Agreement [*See* Doc. 16-2, p. 17].

Regarding plaintiff's conversion claim, "[a] conflict between federal and state law is 'normally a precondition' to a federal court fashioning or applying rules of federal common law." *Jonna v. Latinum*, 617 F. Supp. 3d 758, 770–71 (E.D. Mich. 2022) (quoting *Atherton v. F.D.I.C.*, 519 U.S. 213, 219 (1997)). The Court finds that there is no "conflict" between federal common law and Tennessee law on the claim of conversion.[1] Thus, the Court will also apply Tennessee law for plaintiff's conversion claim.

### 2. Breach of Contract

Under Tennessee law, to make a prima facie case for a breach of contract claim, "a plaintiff must allege: (1) the existence of an enforceable contract, (2) nonperformance amounting to breach of the contract, and (3) damages caused by the breach of the contract." *Whitworth v. City of Memphis*, 689 S.W.3d 579, 584 (Tenn. Ct. App. 2023) (quoting *Tolliver v. Tellico Vill. Prop. Owners Ass'n*, 579 S.W.3d 8, 25 (Tenn. Ct. App. 2019)) (internal quotation marks omitted).

---

[1] Under federal common law, conversion is "an act of control or dominion over the property that seriously interferes with the owner's rights" and is "contrary to the wishes of the owner, or at least without clear permission from the owner." *United States v. Houston*, No. 2:09-0091, 2011 WL 4899983, at *6 (M.D. Tenn. Oct. 14, 2011) (internal quotation marks omitted) (quoting *United States v. Stockton*, 788 F.3d 210, 215 (4th Cir. 1986)).

Here, plaintiff has alleged that the parties entered into a Subcontract Agreement, meeting the first element required of a *prima facie* breach of contract claim [Doc. 1, p. 1].[2] Plaintiff has alleged that defendant breached the Agreement by failing to return the overpayment made by plaintiff as obligated under Agreement Articles 4.3 and 4.4 [*Id.* at 4]. Under Article 4.3 of the Agreement, payments previously made to the Subcontractor, defendant, were subject to reduction by the Contractor, plaintiff, for overpayments [*Id.* at 2]. Similarly, under Agreement Article 4.4, the parties agreed that "[e]ach payment made shall be subject to reduction to the extent of amounts which are found by Contractor, Client, and/or Subcontractor not to have been properly payable" [*Id.* at 4]. Further, Article 4.4 states that the "Subcontractor shall promptly notify Contractor of any overpayments and remit the overpayment amount to Contractor" [*Id.*]. Plaintiff states that it overpaid defendant in the amount of $65,276.29 [*Id.* at 3]. Plaintiff then notified defendant of the overpayment, requesting repayment [*Id.*]. In response, defendant submitted a belated invoice for a change order, of which plaintiff states it did not approve [*Id.*]. And as evidenced by the Agreement, "Change Orders" are to be "formal written order[s]" signed not only by the Subcontractor but also the Subcontractor Administrator [*Id.*].

Accepting all the allegations in the complaint as true, the contractual Agreement between the parties subjected payments made to the defendant to reductions by plaintiff based on overpayments. Additionally, the Agreement required defendant to remit

---

[2] Plaintiff states that it did not attach the Agreement as an exhibit to the complaint due to the confidential nature of the Agreement [*Id.*]; however, plaintiff attached the Agreement in full to its motion for default judgment [Doc. 16-2].

8

overpayments to plaintiff. Defendant has clearly failed to remit such overpayment as at issue here, and therefore, the second and third elements of plaintiff's breach of contract claim have been met.

### 3. Conversion

"[T]he party seeking to make out a *prima facie* case of conversion must prove: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, and (3) in defiance of the owner's true rights." *Commc'ns Unlimited Contracting Servs., Inc. v. Comdata, Inc.*, 611 F. Supp. 3d 483, 497 (M.D. Tenn. 2020) (citing *PNC Multifamily Cap. Inst. Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp.*, 387 S.W.3d 525, 553 (Tenn. Ct. App. 2012)). "A cause of action for conversion occurs when the alleged wrongdoer exercises dominion over the funds in '*defiance of the owner's rights*.'" *Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (quoting *Hanna v. Sheflin*, 275 S.W.3d 423, 427 (Tenn. Ct. App. 2008)) (emphasis in original).

Plaintiff pleaded that defendant converted the amount of the overpayment and that defendant has intentionally and willfully retained this amount owned by plaintiff, despite plaintiff's demands for repayment [Doc. 1, p. 4]. Plaintiff contends that it has been damaged by defendant's conversion of its money [*Id.*]. Plaintiff relies on the same portions of the Agreement supporting its claim for breach of contract for its claim of conversion [*See id.* at 2–4]. Based on the well-pleaded allegations, and the above findings, the

9

reasonable inference from the facts alleged establishes that defendant intentionally appropriated plaintiff's money in defiance of plaintiff's rights and demands for repayment.

### B. Damages, Attorneys' Fees, and Costs

Plaintiff seeks damages, attorneys' fees, and costs. Although the Court must take as true the factual allegations regarding liability in the complaint, plaintiff must prove the appropriate amount of damages. *Bogard*, 2013 WL 2209154, at *3. In determining damages, "[t]he Court may rely on affidavits [and other materials] submitted by plaintiff . . . without the need for a hearing." *Dirs. of the Ohio Conf. of Plasterers & Cement Masons Combined Funds, Inc. v. Akron Insulation & Supply, Inc.*, No. 5:16-CV-1674, 2018 WL 2129613, at *5 (N.D. Ohio May 8, 2018).

Here, plaintiff seeks default judgment against defendant in the amount of $68,431.29, which includes attorney's fees in the amount of $3,155.00, together with the costs of this action [Doc. 16, p. 1].

#### 1. Damages

Plaintiff seeks $65,276.29 in damages based on the overpayment plaintiff made to defendant which defendant did not repay, even after two demands for repayment [Doc. 1, pp. 4–5; Doc. 16-1, p. 2; Doc. 16-3, pp. 1–6]. In support of this damages request, plaintiff attaches two, identical demand letters sent to defendant dated October 10, 2023, and October 23, 2023. [Doc. 16-3]. In these letters, plaintiff quotes defendant as requesting the belated change order invoice be subtracted "from the overpayment[,]" and then defendant would cut "a check for the balance" [*Id.* at 1, 4]. Plaintiff states that defendant

10

acknowledged it was overpaid and would remit the balance of the overpayment after plaintiff subtracted the amount of the invoice [*Id.*]. However, as plaintiff states in the complaint, plaintiff rejected the invoice defendant sent [*Id.*]. Specifically, plaintiff rejected defendant's invoice for the alleged change order as "(1) the work on the Parcel included in the invoice is already part of [defendant's] obligations under the Subcontract Statement of Work[,] and (2) [defendant] did not meet its obligations under Subcontract Article 7, Changes in Work" [*Id.* at 2, 5]. In the letters, plaintiff demands repayment in the amount of $65,276.29 for overpayment for a previous invoice [*Id.*].

"The purpose of assessing damages in breach of contract cases is to place the plaintiff as nearly as possible in the same position [it] would have been in had the contract been performed." *BVT Lebanon Shopping Ctr., Ltd. v. Wal-Mart Stores, Inc.*, 48 S.W.3d 132, 136 (Tenn. 2001) (quoting *Lamons v. Chamberlain*, 909 S.W.2d 795, 801 (Tenn. Ct. App. 1993)). Damages for breach of contract include those directly caused by the breach which "may have reasonably supposed to have entered into the contemplation of the parties." *Id.* (quoting *Simmons v. O'Charley's, Inc.*, 914 S.W.2d 895, 903 (Tenn. Ct. App. 1995)). The overpayment plaintiff made to defendant, of which defendant was required to remit to plaintiff under the Agreement, constitutes damages caused by the contract breach.

Turning to damages under plaintiff's conversion claim, "[t]he ordinary measure of damages for conversion is the value of the property converted at the time and place of conversion, with interest." *Lance Prods. Inc. v. Com. Union Bank*, 764 S.W.2d 207, 213 (Tenn. Ct. App. 1988) (citation omitted). "[A]n owner of property is competent to testify

as to the value of such property." *Stinson v. Stinson*, 161 S.W.3d 438, 446 (Tenn. Ct. App. 2004) (citing *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 234 (Tenn. Ct. App. 1976)). At the time of conversion, the overpayment to defendant was $65,267.29, and therefore, conversion damages are appropriate in this amount.[3]

### 2. Attorney's Fees

Plaintiff requests $3,155.00 in attorneys' fees [Doc. 16, p. 1]. Plaintiff substantiates his request with an affidavit from plaintiff's attorney [Doc. 16-1]. Plaintiff's attorney states that under Article 12(b)(iii) of the attached Subcontract Agreement, an attorneys' fee provision is included, entitling the prevailing party "to reimbursement of its costs and expenses including reasonable attorney[s'] fees, from the non-prevailing [p]arty" [*Id.* at 1; *see* Doc. 16-2, p. 19].

In determining whether the requested amount of attorney's fees is reasonable, courts often employ the "lodestar method" which is "the proven number of hours reasonably expended on the case by the attorney, multiplied by a reasonable hourly rate." *Isabel v. City of Memphis*, 404 F.3d 404, 415 (6th Cir. 2005). Twelve factors are considered in determining the reasonableness of hours and the rate:

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability

---

[3] Though conversion damages may include interest, defendant has not requested interest or an amount inclusive of interest [*See* Doc. 1, p. 5; Doc. 16, p. 2]. Therefore, the Court will not include interest in its consideration of damages.

12

of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

*Id.* at 415–416 (quoting *Reed v. Rhodes*, 179 F.3d 453, 471–72 n.3 (6th Cir. 1999)). However, "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained. *Id.* at 416 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992)) (internal quotation marks omitted).

In determining the appropriate hourly rate to apply, courts "must consider the prevailing market rate in the relevant community for the same type of work at issue." *Brooks v. Invista*, No. 1:05-CV-328, 2008 WL 304893, at *3 (E.D. Tenn. Jan. 30, 2008) (citations omitted). For fee purposes, the "relevant community" is the "legal community within the court's territorial jurisdiction or venue." *Id.* (citations omitted). The "prevailing market rate" is "that rate which lawyers of comparable skill and experience can reasonably expect to command within the relevant community" *Id.* (citations omitted).

The sum which plaintiff requests, $3,155.00, is derived from "8.9 hours of work performed by the undersigned attorney at an hourly rate of $350.00 and 0.40 hours of work by the paralegal assigned to the case at an hourly rate of $100.00" [Doc. 16-1, p. 1]. Plaintiff's counsel states that his work "involving reviewing the Subcontract and case materials, drafting the Complaint and other pleadings, and research related to the default judgment process in this court," and the "paralegal's work included downloading the client's documents from the link provided by the client" [*Id.* at 1–2]. Although plaintiff's counsel has not provided any statement as to his professional experience or years of

13

practice, the Court finds an hourly rate of $350 reasonable, particularly in consideration of the Knoxville Bar Association's 2023 Economic & Law Practice Management Survey, which found that 18% of Knoxville attorneys have average hourly rates of $301-$350. *See* KNOXVILLE BAR ASSOCIATION, ECONOMICS & LAW PRACTICE MANAGEMENT SURVEY 43 (2023), available at https://www.knoxbar.org/?pg=EconomicSurvey2023. Furthermore, the Court finds the paralegal's rate to be reasonable in this case, as the majority (31%) of Knoxville paralegals have hourly rates of $81–$100. *Id.* at 67. Additionally, defendant has not objected to either of these hourly rates, nor the requested sum in its entirety.

### 3. Costs

Plaintiff also requests the costs of this action "together with" the sum of the damages and attorney's fees [Doc. 16, p. 1; *see* Doc. 16-1, p. 2]. However, plaintiff, nor plaintiff's counsel in his affidavit, provide an amount or details regarding the "costs of this action." Further, plaintiff provides no evidence for the Court to ascertain the amount of said "costs." Accordingly, plaintiff's request for "costs of this action" is denied without prejudice. *See ProAmpac Holdings, Inc. v. First Source, LLC*, No. 1:20-cv-417, 2021 WL 2334288, at *2 (S.D. Ohio June 8, 2021) (denying plaintiff's request for "costs" after plaintiff provided no amount claimed or evidence for the court to ascertain the amount of said "costs").

## IV. Conclusion

For the foregoing reasons, plaintiff's motion [Doc. 16] is **GRANTED in part** and **DENIED in part**. Plaintiff's request for damages in the amount of $68,431.29 is **GRANTED**. The Court will **ORDER** that plaintiff recover from defendant the total sum

of $68,431.29 and post-judgment interest according to law from the date of the contemporaneously-filed judgment order until the amount is paid in full as detailed:

| Damages | Attorneys' Fees | TOTAL |
|---|---|---|
| $62,276.29 | $3,155.00 | **$68,431.29** |

However, plaintiff's request for "costs of this action" is **DENIED without prejudice**. Plaintiff may renew its motion for "costs" with appropriate documentation within **fourteen (14) days** of entry of this Order. If no timely motion is filed, the case will be closed.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE